TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00384-CR







Arturo Salomon, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT


NO. 98-050-K368, HONORABLE WILLIAM S. LOTT, JUDGE PRESIDING






A jury found appellant Arturo Salomon guilty of possessing more than 400 grams
of cocaine with intent to deliver and assessed punishment at imprisonment for seventy-two years. 
See Tex. Penal Code Ann. § 481.112(a), (f) (West Supp. 1999). Appellant brings forward seven
points of error complaining that the district court erred by overruling his motion to suppress
evidence. We will overrule these points and affirm the judgment of conviction.

On the afternoon of November 20, 1997, Department of Public Safety trooper
Mario Orozco was watching northbound traffic on Interstate 35 when he saw an automobile pulling
a small, rental trailer traveling about two car lengths behind an eighteen-wheel tractor-trailer. 
Believing it was following the truck too closely, Orozco stopped the automobile for the purpose
of issuing a warning ticket. See Tex. Transp. Code Ann. § 545.062(a) (West 1999) (operator shall
maintain assured clear distance when following another vehicle). The driver of the automobile
was appellant Arturo Salomon.

Appellant remained seated in his vehicle as Orozco walked up to speak to him
through the passenger-side window. Orozco testified that appellant was shaking as if nervous, and
that the car had an unusually strong odor of air freshener. The officer saw two liquor bottles in
the rear floorboard that bore tax stamps indicating they had been purchased in Mexico. Orozco
told appellant why he had been stopped and asked if appellant had been to Mexico. Appellant told
Orozco that he was from Iowa, had been visiting in San Antonio for one day, and was returning
to Iowa with furniture in the trailer. He said he had not been to Mexico.

Orozco returned to his patrol car to write the citation. He called his dispatcher and
asked that the Border Patrol information center in El Paso be contacted to determine whether
appellant's automobile had crossed the border recently. The information center reported that the
vehicle crossed the border at Eagle Pass the previous day. At this point, appellant had been
stopped approximately twenty minutes.

Orozco's suspicions were aroused by appellant's nervousness and disavowal of
being to Mexico despite the evidence to the contrary, and by the strong air freshener which Orozco
knew from experience was used by drug couriers to mask incriminating odors. When he returned
to appellant's car, Orozco again asked appellant if he had been to Mexico. Appellant repeated his
denial. The officer gave appellant his ticket and returned his driver's license and insurance
papers. He then asked appellant if he had "anything illegal." Appellant replied that he did not,
and volunteered to allow Orozco to search the trailer. Orozco asked if he could also search the
car. Appellant answered, "[G]o ahead. I don't have anything." 

Given the heavy traffic, Orozco did not want to conduct the search at the side of
the highway. The officer asked appellant if he would follow him to a truck stop about one mile
away. Appellant agreed to this, and drove behind the officer to the truck stop. There, appellant
and Orozco waited for the arrival of a drug-sniffing dog. The dog did not alert when it sniffed
appellant's vehicle, but Orozco noticed that appellant had become even more nervous. He and
another officer began to search the car manually. Through a vent in the center post, the second
officer saw a package inside the rear passenger-side quarter panel of the car. Appellant was
immediately arrested and advised of his rights. In response to questioning, appellant told Orozco
that the package contained cocaine. Upon further inspection, the officers discovered a hidden
release mechanism that allowed the quarter panel to be opened. Appellant admitted that he was
aware of the secret compartment. The hidden package was shown to contain just under one kilo
of cocaine.

Appellant moved to suppress the cocaine as the fruit of an unconstitutional search
and seizure. The motion to suppress was carried to trial, where Officer Orozco was the State's
first witness. At the conclusion of his testimony, appellant and the State argued the motion outside
the jury's presence. The court overruled the motion and trial continued. Later, during the
testimony of the State's chemist, the cocaine was offered in evidence. Appellant took the chemist
on voir dire and questioned him briefly about his ability to identify the exhibit. At the conclusion
of the voir dire, defense counsel stated that he had no objection. 

The State urges that appellant waived any error in the overruling of the motion to
suppress. As the State correctly points out, a defendant who unsuccessfully moves to suppress
evidence may waive error by later stating that he has no objection to the admission of the
challenged evidence. See Moody v. State, 827 S.W.2d 875, 889 (Tex. Crim. App. 1992). In this
cause, however, the context makes it clear that counsel was merely indicating that he had no
objection regarding the identification of the exhibit as the cocaine seized from appellant. We
decline the State's invitation to hold that appellant waived the constitutional search and seizure
issues raised in his motion to suppress.

Appellant contends that both the initial stop of his car and his subsequent detention
by the officer were unlawful, that this illegality rendered his consent to the search of the car
involuntary, and that the cocaine was therefore the fruit of an unlawful search. When reviewing
a decision to overrule a motion to suppress evidence, we defer to the trial court's determination
of the historical facts supported by the record. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997). Subject to an exception not applicable to this cause, however, we review de novo
the trial court's application of the law to the facts. Id. In accordance with Guzman, we have
summarized the relevant facts in the light most favorable to the district court's ruling. We now
turn to the question whether the court correctly applied the law to these facts.

Appellant first contends the traffic stop violated his rights under the Fourth
Amendment because Officer Orozco did not have reasonable grounds to believe that appellant was
committing a traffic offense. Section 545.062 requires that a driver maintain an assured clear
distance between his own vehicle and the vehicle in front of him, so as to be able to safely stop
without colliding with the preceding vehicle. Appellant argues that Orozco "could not reasonably
have known whether or not [he] could have stopped safely . . . ." 

Although appellant refers to the stop as a warrantless arrest, there is no evidence
that it began as anything other than a routine traffic stop. Such a stop is properly treated as a
temporary investigative detention. See Berkemer v. McCarty, 468 U.S. 420, 437-39 (1984); see
also Armitage v. State, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982). The reasonableness of a
temporary detention must be examined in terms of the totality of the circumstances. See Woods
v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). A detention is justified if the officer has
specific articulable facts that, taken together with rational inferences from those facts, lead him
to conclude that the person detained is engaged in criminal activity. Id. Orozco, a thirteen-year
veteran of the Department of Public Safety, saw appellant driving two car-lengths behind the truck
in front of him on a busy interstate highway. The officer testified that if the truck suddenly
stopped, appellant would have been forced to swerve into another lane of traffic in order to avoid
colliding with the truck. We hold that Orozco had a reasonable basis for believing that appellant
was violating section 545.062. The stop was therefore lawful. The opinion of this Court in
Hernandez v. State, 983 S.W.2d 867 (Tex. App.--Austin 1998, pet. ref'd), relied on by appellant
is legally and factually distinguishable. Point of error one is overruled.

By his second point of error, appellant contends that even if the initial stop was
lawful, his subsequent detention for purposes unrelated to the observed traffic offense violated his
Fourth Amendment rights. A temporary detention may last no longer than is necessary to
effectuate the purpose of the stop. See Florida v. Royer, 460 U.S. 491, 500 (1983); Davis v.
State, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997). A traffic stop that is not temporary and
reasonably related in scope to the circumstances that justified the interference violates the Fourth
Amendment. Davis, 947 S.W.2d at 243. Appellant urges that Officer Orozco was engaged in a
fishing expedition for unrelated criminal activity when he detained appellant for twenty minutes
in order to determine whether his automobile had recently been in Mexico. Appellant argues that
his detention beyond the time reasonably necessary to issue the warning ticket was
unconstitutional.

We will assume without deciding that running a Border Patrol check cannot be
justified as a routine part of any mere traffic stop. In this cause, however, the officer was not
acting solely on the basis of the observed traffic offense. Orozco had also noticed appellant's
unusual nervousness and smelled the strong air freshener he knew to be associated with drug
couriers. The officer also had seen in plain view the liquor bottles with their tell-tale tax stamps,
which led him to believe that appellant was lying about not having been in Mexico. These
additional observations following the initial stop, and the inferences they support, gave Orozco
a reasonable basis for suspecting that appellant might be transporting controlled substances and
warranted the relatively brief additional detention necessary to determine whether appellant's car
had recently crossed the border. They also distinguish this cause from Davis. Point of error two
is overruled.

Appellant next argues that his consent to the search of his automobile was rendered
involuntary by his unlawful detention and arrest, citing the arguments made in points one and two. 
Because the preceding points are without merit, this contention necessarily fails. Appellant does
not advance any further argument in support of his assertion that the consent was involuntary. 
Point of error three is overruled. 

By his fourth point of error, appellant argues that Officer Orozco's actions cannot
be justified by the community caretaking exception to the Fourth Amendment warrant
requirement. See Cady v. Dombrowski, 413 U.S. 433, 441 (1973). Having found that appellant
was lawfully stopped and detained without reference to the community caretaking exception, we
need not decide this point. Point of error four is overruled.

In his remaining points of error, appellant contends his stop, detention, and consent
to search were unreasonable under article one, section nine of the Texas Constitution. See Hulit
v. State, 982 S.W.2d 431 (Tex. Crim. App. 1998). Although appellant cites Texas cases in
support of these points, he does not offer an independent interpretation of the Texas Constitution. 
To the contrary, the opinions he cites are Fourth Amendment cases and his arguments merely
restate contentions made in the previous points. Points of error five, six, and seven are overruled.

The judgment of conviction is affirmed.



 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Affirmed

Filed: August 12, 1999

Do Not Publish



n terms of the totality of the circumstances. See Woods
v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). A detention is justified if the officer has
specific articulable facts that, taken together with rational inferences from those facts, lead him
to conclude that the person detained is engaged in criminal activity. Id. Orozco, a thirteen-year
veteran of the Department of Public Safety, saw appellant driving two car-lengths behind the truck
in front of him on a busy interstate highway. The officer testified that if the truck suddenly
stopped, appellant would have been forced to swerve into another lane of traffic in order to avoid
colliding with the truck. We hold that Orozco had a reasonable basis for believing that appellant
was violating section 545.062. The stop was therefore lawful. The opinion of this Court in
Hernandez v. State, 983 S.W.2d 867 (Tex. App.--Austin 1998, pet. ref'd), relied on by appellant
is legally and factually distinguishable. Point of error one is overruled.

By his second point of error, appellant contends that even if the initial stop was
lawful, his subsequent detention for purposes unrelated to the observed traffic offense violated his
Fourth Amendment rights. A temporary detention may last no longer than is necessary to
effectuate the purpose of the stop. See Florida v. Royer, 460 U.S. 491, 500 (1983); Davis v.