ACCEPTED
03-15-00553-CR
7757150
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/10/2015 9:37:30 AM
JEFFREY D. KYLE
CLERK

**No. 03-15-00553-CR**

In the Third Court of Appeals
Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/10/2015 9:37:30 AM
JEFFREY D. KYLE
Clerk

# THE STATE OF TEXAS,

*Appellant,*

**v.**

# PHILIP DUBORD,

*Appellee.*

On appeal from the County Court-at-Law Number Three,
Travis County, Texas
Trial Cause No. C-1-CR-12-204755

# STATE'S BRIEF

DAVID A. ESCAMILLA
TRAVIS COUNTY ATTORNEY

GISELLE HORTON
ASSISTANT TRAVIS COUNTY ATTORNEY
State Bar Number 10018000
Post Office Box 1748
Austin, Texas 78767
Telephone: (512)854-9415
TCAppellate@traviscountytx.gov

*November 10, 2015*          ATTORNEYS FOR THE STATE OF TEXAS

**ORAL ARGUMENT IS NOT REQUESTED**

**IDENTITY OF PARTIES AND COUNSEL**

The parties to the trial court's order suppressing the prosecution's evidence are the Travis County Attorney on behalf of the State of Texas, and Philip Dubord, Appellee.

The State of Texas was represented by:

David A. Escamilla
Travis County Attorney
Post Office Box 1748
Austin, Texas 78767

Appellee was represented by:

Wayne D. Meissner
812 San Antonio Street, Suite 400
Austin, Texas 78701-2224

**STATEMENT REGARDING ORAL ARGUMENT**

This enhanced DWI case asks: Is reasonable suspicion defeated if a DWI enforcement officer who sees traffic violations in the early-morning hours on Sixth Street does not detain immediately, but instead follows for six miles and observes more erratic driving before pulling the motorist over? Because this question may be fully and fairly addressed in briefs, the State does not request oral argument.

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . i

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUE PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF THE STATE'S ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT

    *Point of Error*: The trial court abused its discretion in
    suppressing the State's evidence.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    1.1    The trial court's ruling.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    1.2    The standard of review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    1.3    What are the facts of this case under the current findings?. . . . 6
        1.3.1  The trial court found that Sergeant Johnson observed
               traffic violations on Sixth Street.. . . . . . . . . . . . . . . . . . . 8
        1.3.2  Additionally, the trial court found that Johnson
               *claimed* to have stopped Dubord for Sixth Street
               traffic violations, but that this claim had
               diminished credibility.. . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    1.4    The finding—that Johnson's claim to have stopped Dubord
         for Sixth Street violations had diminished credibility
         because he followed for six miles—shows that the trial court
         misapplied the law.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    1.5    Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# INDEX OF AUTHORITIES

**Cases**                                                                 **Page**

*Armitage v. State*, 637 S.W.2d 936
(Tex. Crim. App. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Carmouche v. State*, 10 S.W.3d 323
(Tex. Crim. App. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Crittenden v. State*, 899 S.W.2d 668
(Tex. Crim. App. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Davis v. United States*, ___ U.S. __, 131 S. Ct. 2419
(2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Garcia v. State*, 827 S.W.2d 937
(Tex. Crim. App. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Miles v. State*, 241 S.W.3d 28
(Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Powell v. State*, No. 03-10-00728-CR, 2011 Tex. App. LEXIS 7601
(Tex. App.—Austin Sept. 14, 2011, no pet.)
(mem. op., not designated for publication). . . . . . . . . . . . . . . . . . . . . . 11

*State v. Dixon*, 206 S.W.3d 587
(Tex. Crim. App. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*State v. Johnson*, 336 S.W.3d 649
(Tex. Crim. App. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Wade v. State*, 422 S.W.3d 661
(Tex. Crim. App. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Walter v. State*, 28 S.W.3d 538
(Tex. Crim. App. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Whren v. United States*, 517 U.S. 806
(1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Wilson v. State*, 311 S.W.3d 452
(Tex. Crim. App. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*York v. State*, 342 S.W.3d 528
(Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 1093 (2012). . . . . . . . . . 10

The State appeals an order suppressing its evidence in an enhanced DWI case.[1] CR 15. The trial court entered the suppression order on August 5, 2015. CR 81. The State gave notice of appeal on August 25, 2015. CR 90–91.

## BACKGROUND

After a pretrial evidentiary hearing, Judge Michael McCormick, sitting by assignment, entered an order granting the motion to suppress, which alleged only that the arrest was unlawful. CR 56–58 [motion], 81 [order]. But the pretrial hearing's only issue was the initial detention's legality; the defense never litigated the arrest's reasonableness. Only Sergeant Johnson, the detaining officer, testified; the defense did not call the arresting officer. The defense theory was that Johnson acted illegally because he observed Dubord commit traffic violations on Sixth Street, but, instead of detaining him immediately, followed and observed him for six

---

[1] The enhancement paragraph alleged that Dubord had a blood-alcohol concentration greater than .15. CR 15.

1

miles before initiating a stop. RR 21–71. Sergeant Johnson testified that he observed a great deal more erratic driving during those brief six miles, RR 20–41, but the trial court's findings barely touch upon that testimony.

The trial court found as follows:

1. In the early morning hours of 3-23-12 Officer Johnson observed the Defendant traveling west in the 1600 block of West Sixth Street.

2. The Defendant moved across two lanes of traffic and headed onto MoPac Boulevard, and Officer Johnson followed.

3. Officer Johnson testified he followed the Defendant for approximately six more miles before stopping him, testifying that the defendant crossed from his lane of travel on more than one occasion.

CR 89.

The court concluded:

Defendant argues his stop and arrest were without probable cause.

The fact the officer waited six miles to stop the defendant diminishes the credibility of his claim that he stopped the defendant for lane change violations on Sixth Street.

CR 89.

## ISSUE PRESENTED

Do the federal and state exclusionary rules mandate suppression if a DWI enforcement officer does not pull a motorist over immediately for a traffic violation, but follows him briefly for six miles?

## SUMMARY OF THE ARGUMENT

The findings show that the trial court (1) believed that Sergeant Johnson saw Dubord commit traffic violations on Sixth Street, but (2) disbelieved his claim that he stopped Dubord for those violations. The record supports the finding that Johnson saw Sixth Street violations, but not the finding that Johnson claimed to have stopped Dubord for this reason. Johnson testified that he stopped Dubord on suspicion of DWI, based on the totality of the circumstances.

Furthermore, Johnson's subjective motivation for detaining is irrelevant. The reasonable-suspicion test is objective, and a traffic violation committed in an officer's presence authorizes an initial stop. The suppression order was therefore an abuse of the court's discretion.

The order stands for the astonishing proposition that reasonable suspicion is defeated when an officer follows for less than six minutes to observe more suspicious behavior. In short, the order suppresses all evidence underlying the stop because that stop was the product of police investigation. The order punishes commendable conduct, and therefore misapplies the federal and state exclusionary rules, whose sole aim is to deter police misconduct.

## ARGUMENT

*Point of Error*: **The trial court abused its discretion in suppressing the State's evidence.**

### 1.1 The trial court's ruling

The trial court concluded that "Defendant argues his stop and arrest were without probable cause." CR 89. But the parties litigated only the investigative detention's reasonableness. We may therefore fairly infer, because this involves only a legal conclusion, that the trial court meant to conclude that the stop was without reasonable suspicion.

## 1.2 The standard of review

Courts apply a bifurcated standard of review to a ruling on a motion to suppress evidence. *Wilson v. State,* 311 S.W.3d 452, 457–58 (Tex. Crim. App. 2010); *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Under that standard, the Court defers to the trial court's determination of historical facts "if supported by the record," *Wade v. State,* 422 S.W.3d 661, 666 (Tex. Crim. App. 2013), but reviews de novo the trial court's application of the law to those facts. *Wilson,* 311 S.W.3d at 458. Similarly, appellate courts afford "almost total deference" to rulings on mixed questions of law and fact when the resolution of those questions depends on the evaluation of credibility and demeanor. They review de novo (1) mixed questions of law and fact that do not depend on an evaluation of credibility and demeanor, and (2) purely legal questions. *State v. Johnson,* 336 S.W.3d 649, 657 (Tex. Crim. App. 2011).

**1.3 What are the facts of this case under the current findings?**

The factual findings are set out in the background section of this brief. The most salient finding comes after a section entitled "conclusion of law":

> The fact the officer waited six miles to stop the defendant diminishes the credibility of his claim that he stopped the defendant for lane change violations on Sixth Street.

CR 89. This finding may be reasonably read to show that the trial court (1) believed that Sergeant Johnson observed violations on Sixth Street, but (2) found that Johnson's *claim* that he stopped Dubord for this reason had "diminished" credibility because Johnson followed Dubord six miles before detaining him.

This is the most reasonable reading of that finding, because (1) Johnson's observing violations on Sixth Street in the early morning hours would explain why he began to follow and observe Dubord; and (2) the main thrust of defense counsel's pretrial theory was that Johnson was neglectful of duty for not stopping Dubord sooner after observing not only

the Sixth Street violations but all the other violations that Johnson observed during the six miles.[2]

_____

[2]    Counsel developed this theory at great length. Johnson

- "decided not to turn on [his overhead] lights when [he] first observed a crime being committed." RR 21.
- did not activate his overhead lights on MoPac "to keep a traffic violator from entering MoPac Boulevard." RR 22.
- did [not] "hit [his] overhead lights to get the traffic violator off of MoPac onto Rollingwood[.]" RR 23.
- did not "hit [his] overhead lights" when Dubord drifted out of his lane five or six times on MoPac. RR 24.
- saw at least two traffic violations in the 1600 block of West Sixth Street, a speeding violation "somewhere across the river," and "several lane violations" on Mopac, but still was not "sure if [he was] going to enforce the traffic laws." RR 25.
- did not make any effort to enforce the traffic laws on at least three or more occasions. RR 26.
- was not prevented by roadway obstructions or vehicular concerns from asking Dubord to exit on Barton Skyway. RR 27.
- did not "ask the vehicle to exit at any of the [MoPac exits], even to give a warning citation for all of the traffic violation [Johnson had] already observed." RR 27–28.
- did not "make a decision to enforce the traffic laws near the 360 exit[.]" RR 28.
- did not, "for whatever reason," decide to enforce the traffic law on the Southwest Parkway exit. RR 29–30.
- was not impeded by obstacles or barriers that prevented him from asking the driver to pull over on Southwest Parkway. RR 29.
- did not turn on his overhead lights at the Monterey Oaks intersection. RR 30.
- had no barriers or impediments to enforcing the traffic laws from West Sixth Street "all the way past the exit from Monterey Oaks[.]" RR 36.

### 1.3.1 The trial court found that Sergeant Johnson observed traffic violations on Sixth Street.

The record supports the finding that Johnson observed lane-change violations on Sixth Street. RR 16, 37. It is axiomatic that a traffic violation committed in an officer's presence authorizes an initial stop. *Walter v. State,* 28 S.W.3d 538, 543 (Tex. Crim. App. 2000); *Armitage v. State,* 637 S.W.2d 936, 939 (Tex. Crim. App. 1982). The suppression order was therefore an abuse of the trial court's discretion.

### 1.3.2 Additionally, the trial court found that Johnson *claimed* to have stopped Dubord for Sixth Street traffic violations, but that this claim had diminished credibility.

Contrary to the court's finding, Johnson did not claim to have stopped Dubord for the Sixth Street traffic violations. Johnson unequivocally testified that he was on DWI enforcement duty and was

---

- did not turn on his overhead lights until he got near the intersection at Monterey Oaks. RR 61.

In the hearing's argument portion, counsel asked the trial court to suppress, not because Johnson's testimony was not credible but because the "distance [and] time were unreasonable under the circumstances." RR 68–71.

"there to get drunks off the road," not to write traffic tickets. RR 42. As a DWI enforcement officer, he makes stops immediately for "excessive speeding or near collisions, stuff like that[.]" RR 42. "But when I start seeing minor traffic violations that continue to occur, then it may take me a little bit longer to make that decision, and that's what happened with this case." RR 26. He initiated a detention on suspicion of DWI, based on a totality of circumstances that included the Sixth Street violations, when Dubord nearly struck another car as he drifted out of his lane on the MoPac frontage road. RR 28.

> Based on the time of day, which was 1:44 a.m. in the morning; the location at which [he] observed the vehicle coming from, which would have been downtown Austin, which is occupied by many nightclubs and drinking establishments; the minor traffic violations of failing to signal intent, failing to maintain a single marked lane, and speeding, and then eventually running the red light[.]

RR 41.

**1.4    The finding—that Johnson's claim to have stopped Dubord for Sixth Street violations had diminished credibility because he followed for six miles—shows that the trial court misapplied the law.**

The trial court found that Johnson's credibility as to this claim was "diminished" because he followed and watched Dubord for six miles. (This, by the way, would have taken fewer than six minutes because Dubord was speeding on MoPac.) This finding shows a misapplication of the law for at least two reasons.

First, under the objective test for determining whether an investigative detention is reasonable under the Fourth Amendment or Article I, § 9, an officer's subjective intent for the detention is irrelevant. *Whren v. United States,* 517 U.S. 806, 813–14 (1996); *York v. State,* 342 S.W.3d 528, 536 (Tex. Crim. App. 2011), *cert. denied,* 132 S. Ct. 1093 (2012); *Garcia v. State,* 827 S.W.2d 937, 943 (Tex. Crim. App. 1992) (adopting the objective test for Fourth Amendment analysis); *Crittenden v. State,* 899 S.W.2d 668, 671, 673 (Tex. Crim. App. 1995) (adopting the objective test for Article I, § 9 claims). Consequently, part of the court's finding—that the officer's

10

claimed motivation for stopping Dubord was less credible because he followed him for six miles—has no legal significance because it applies a long-disavowed subjective test.

Second, a narrow focus on time and distance misapplies the totality test, particularly when the officer has a reasonable explanation for the delay, such as wanting to further observe suspicious behavior before detaining. *See Powell v. State,* No. 03-10-00728-CR, 2011 Tex. App. LEXIS 7601, at *15 (Tex. App.—Austin Sept. 14, 2011, no pet.) (mem. op., not designated for publication). *Dixon,* upon which the defense relied at the pretrial hearing, does not stand for the proposition that police commit misconduct when they follow a motorist to observe more before making a stop. On the contrary, the Court of Criminal Appeals upbraided the Texarkana Court for misapplying the totality test by "unnecessarily focus[ing] on the distance and time the police followed the driver before pulling Appellee over." *State v. Dixon,* 206 S.W.3d 587, 591 (Tex. Crim. App. 2006).

11

## 1.5    Conclusion

Police officers have every right to drive on public streets behind other cars, just as they are free to approach people and ask for information or their cooperation. Johnson's following Dubord for a brief distance did not implicate federal or state constitutional rights. Indeed, Sergeant Johnson should be commended, not condemned, for the careful police work that he engaged in before initiating the minimal intrusion on Dubord's liberty.

Courts and defense lawyers often decry that a police officer should have waited to see more before initiating a stop when they suspect DWI: "The officer was too hasty to detain!" Here, ironically, the contention is the opposite: "Whatever the officer's assignment is, the law requires him to stop a motorist for a traffic violation immediately, or else!" If anything, following to observe more suspicious behavior only increases reasonable suspicion, which has no upper cut-off point.

The pretext doctrine is dead. And a suppression ruling on these grounds, if allowed to stand, would have a chilling effect on investigation. The court's suppression order unjustly penalizes the people of this state

and ignores the exclusionary rule's sole purpose: to deter police misconduct. *Davis v. United States,* ___ U.S. ___, 131 S. Ct. 2419, 2432 (2011); *Miles v. State,* 241 S.W.3d 28, 35 (Tex. Crim. App. 2007).

## PRAYER

Because the trial court abused its discretion in suppressing the evidence on these facts, the Travis County Attorney, on behalf of the State of Texas, asks this Court to sustain his point, reverse the trial court's suppression order, and remand this case to the trial court for proceedings consistent with its opinion.

Respectfully submitted,

DAVID A. ESCAMILLA
TRAVIS COUNTY ATTORNEY

_____

Giselle Horton
Assistant Travis County Attorney
State Bar Number 10018000
Post Office Box 1748
Austin, Texas  78767
Telephone: (512) 854-9415
TCAppellate@traviscountytx.gov

ATTORNEYS FOR THE STATE OF TEXAS

**CERTIFICATE OF COMPLIANCE**

Relying on Corel WordPerfect's word-count function, I certify that this document complies with the word-count limitations of TEX. R. APP. P. 9.4. The document, counting all of its parts, contains 2890 words.

_____

Giselle Horton

**CERTIFICATE OF SERVICE**

I certify that I have sent a complete and legible copy of this State's brief via electronic transmission, to Mr. Dubord's attorney of record, Mr. Wayne Meissner, at waynemeissner@fitzgeraldmeissner.com on or before November 12, 2015.

_____

Giselle Horton
Assistant Travis County Attorney

14